# SUPERIOR COURT.

ORSAMUS EATON, URI GILBERT and EDWARD O. EATON, respondents, agt. WILLIAM H. ASPINWALL, appellant.

A person who has openly avowed himself a *stockholder* of a company, registered himself as such upon its books, and, as a stockholder, taken part in its management, cannot be allowed, as to third persons, to prove that the corporation was *never lawfully created*.

And especially so, when the defect is an omission of an act *to be proved by testimony*, and not a prerequisite to be publicly declared and recorded, before an association can acquire a legal entity as a corporation.

If, as is well settled, a party may not controvert the legal existence of a corporation, when enforcing a contract avowedly made with it, he should not be allowed to defeat a creditor of the company, utterly ignorant of the defect or error, when he has admitted himself to be a member.

Where the act of incorporation is express, that the stockholders shall be severally individually liable to the creditors of the corporation to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such corporation, until the amount of its capital shall have been paid in, and a certificate thereof shall have been made and recorded, as prescribed in the act.

It is clear, that if a stockholder has fully paid up his subscription, or is an assignee of full paid stock, he is responsible up to the entire amount he holds, for all debts contracted while he owned the stock, until not only the stock is fully paid up, but also until the *certificate is duly filed*.

*November General Term,* 1856.

APPEAL from a judgment entered upon the report of a referee in favor of the plaintiffs.

The cause having been at issue upon the complaint and answer, an order of reference was made to a referee to hear and determine the whole action.

He found by his report the following facts and conclusions :

"That on the 8th of January, 1853, seven persons filed in the office of the clerk of the city and county of New-York, and a duplicate copy thereof in the office of the secretary of state, under and in pursuance of an act of the people of the state of New-York, entitled 'An Act for the incorporation of companies

formed to navigate the ocean by steamships, passed April 12, 1852,' a certificate made and signed by themselves and others, and acknowledged before a commissioner of deeds by themselves, stating, among other things, that those who signed said certificate did thereby form themselves into a corporation, to be called 'The Mexican Ocean Mail and Inland Company,' for the purpose of building for their own use, equipping, furnishing, fitting, purchasing, chartering, navigating, and owning vessels to be propelled, solely or partially, by the power or aid of steam, or other expansive fluid or motive power, to be used in lawful commerce and navigation upon the ocean and seas, and for the transportation of passengers, freights and mails, and for holding other property. The principal office for managing the affairs of the company being in the city of New-York, and stating particularly the ports between which such vessels were intended to be navigated, and that the capital stock of the company should be one million five hundred thousand dollars, to be divided into fifteen thousand shares of one hundred dollars each; that the term of the existence of said company was to be twenty years from the first day of January, 1853; that there were to be nine directors, stating their names, who should manage the concerns of said company for the first year."

He also found, as matter of fact, that ten per cent. of the capital named had not been paid in.

That said company elected officers, hired an office, and went into operation in January aforesaid.

That on the 28th day of March, 1853, the defendant became the owner of two hundred and fifty shares of the stock of said company.

That in April of the said year the said company employed the plaintiffs, who are co-partners, doing business at the city of Troy, under the firm-name of Eaton, Gilbert & Co., to furnish coaches and fixtures for said company, which were made and delivered to said company by said plaintiffs, for which said company, by its company name and by its president, gave the plaintiffs two promissory notes, each for the sum of $1,221.30; one dated Sept. 17, 1853, payable four months after date; and

the other dated Sept. 22, 1853, payable six months after date; and a third promissory note, for the sum of $1,214.42, dated Sept. 22, 1853, payable five months after date.

' That a judgment was obtained upon said notes in the supreme court of this state, in favor of said plaintiffs against the Mexican Ocean Mail and Inland Company, on the 30th of June, 1854, for the sum of $3,758.83.

That· on the last mentioned day an execution was issued upon the said judgment to the sheriff of the county of New-York, which was returned wholly unsatisfied on the 15th day of July, 1854.

That the certificate required by the 7th section of said act of April the 12th, 1852, has not been made, signed, sworn to, or recorded.

.. That the defendant continued to be a stockholder in said company, and the owner of said two hundred and fifty shares of stock, during the period when the above named liabilities in favor of the plaintiffs were contracted and accrued, and as such stockholder has taken part in the management of the company.

That, as matter of law, the omission to pay in ten per cent. of the capital stock of said company, is not a defence to the defendant in the action against the claim of the said plaintiffs.

That the said plaintiffs are entitled to recover from the defendant the amounts of the said several promissory notes, with interest from the time when they respectively became due; amounting altogether, at the date of this report, to the sum of $4,098.34, besides the costs of this action.

In addition to the·facts thus found by the referee, the following are of importance :—The seventh article of the association provided that it should be the duty of the secretary or treasurer, under the direction of the directors, to issue scrip to those who shall be entitled to stock in the company, when ten per cent. upon the whole amount of capital subscribed shall have been paid in thereon, which scrip shall be signed by the resident presiding officer of the company, and countersigned by the secretary or treasurer.

The eighth article provided that it should be the duty of the

Eaton, Gilbert and Eaton agt. Aspinwall.

secretary or treasurer to indorse upon the scrip which shall be held by any stockholder every sum which shall be paid thereon; and whenever the capital stock of the said company shall be paid in, certificates of full stock shall, in like manner, be issued, according to the by-laws of the company, and the scrip aforesaid shall be cancelled.

The articles of association were dated the first of January, 1853, and the certificate filed the 8th of that month.

Various provisions of the statute under which the association became a corporation are noticed in the opinion of the court.

H. C. Van Vorst, *for plaintiffs.*
Wm. M. Evarts, *for defendant.*

By the court—Oakley, Chief Justice. The articles of association under which the Mexican Ocean Mail and Inland Company was formed, were dated the 1st of January, 1853, and a copy of such articles was filed in the office of the clerk of the county of New-York, and a certified copy of the same filed with the secretary of state on the 25th of January, 1853.

This was a sufficient compliance with the requirements of the act of April the 12th, 1852, directing the filing of a certificate in writing in order to the incorporation of ocean steam companies.

But by the second section of such act it is provided, that when the certificate shall have been filed as aforesaid, *and ten per cent. of the capital named paid in,* the persons who shall have signed and acknowledged the same, and all others who may thereafter be holders of any share or shares of said capital stock, and their successors, shall be a body politic and corporate in fact and in name, by the name stated in such certificate, and shall have all the power, &c.

It is to be observed that the first section does not demand that the certificate should state the payment of the ten per cent. The strict letter of the second section imports that the corporate character does not arise until the ten per cent. is paid; but then that must be a fact to be ascertained by testimony.

In connection with this section of the statute, the seventh

article of the association should be noticed. Scrip was to be issued when ten per cent. was paid in. Each successive payment was to be indorsed on this scrip, until the whole was paid up, when certificates of full stock were to be issued.

The fourth section authorizes successive calls by the directors for payment of instalments on the stock; and the seventh section directs a certificate to be filed within thirty days after the last instalment has been paid, stating the amount of the capital paid in and sworn to, as prescribed : this was not done, as the referee finds.

The referee has found that the ten per cent. was not, in fact, paid in. A witness swore positively that all the stock had been paid up, and much testimony was taken as to the mode in which this was accomplished. We do not propose to enter upon this question, nor to scrutinize this transaction. We shall determine the case upon the assumption that the ten per cent. had never been paid in.

There are two prominent facts to be noticed :—

*First.* There is an allegation of the complaint, and an admission in the answer, of no little consequence. The plaintiffs aver that the defendant was a stockholder and owner of two hundred and fifty shares of stock in the said corporation, to the amount of $25,000, at the time the coaches were manufactured for, and delivered to the said corporation, and at the time the notes were given. The defendant admits that he is the owner of two hundred and fifty of the full shares of said alleged corporation, but puts in issue the allegation of his being such when the debt was contracted. This last point is found against him, and correctly so.

*Next.* Upon the 28th of March, 1853, the defendant, has a transfer made to him on the stock ledger of the company, by which Rankin, president, transfers to him two hundred and fifty shares. This book was kept by the company, as the law prescribed. A certificate was, on the same day, issued and delivered to him, and a receipt given by him for it to the president.

The tenth section of the statute of 1852 directs a book to be

Eaton, Gilbert and Eaton agt. Aspinwall.

provided, in which shall be entered the names of the original stockholders, and of all transferees, with their residences. This book is to be open to public inspection. In all proceedings under the provisions of the act, such book shall be presumptive evidence of the contents thereof, but such presumption may be repelled by evidence by any party or person interested in doing so. There is proof also of the defendant's acting on behalf of the company in measures for its benefit.

There are other pieces of testimony tending to show recognitions by the defendant of his character as a stockholder of the company. But we think those we have referred to are enough to raise the legal question:—The question is, whether one who has openly avowed himself a stockholder of the company, registered himself as such upon its books, and, as a stockholder, taken part in its management, can be allowed, as to third persons, to prove that the corporation was never lawfully created?

We answer this question in the negative. We so answer it with greater decision when, as in this case, the defect is an omission of an act to be proved by testimony, not a prerequisite to be publicly declared and recorded, before an association can acquire a legal entity as a corporation.

The cases referred to, of *M'Farlan* agt. *The Triton Insurance Co.*, (4 *Denio*, 392;) *Schoharie & Saratoga Plankroad Co.* agt. *Thatcher*, (1 *Kernan*, 108;) *All Saints' Church* agt. *Leverett*, (1 *Hall*, 191;) *Palmer* agt. *Lawrence*, (3 *Sandf. S. C. Rep.* 170,) determine that neither a stockholder who has acted as a director, nor a party incurring a debt to a company, can set up as a defence an irregularity which might show that the corporation never existed, or that it had incurred a forfeiture.

The principle of these cases must control the present. If a party may not controvert the legal existence of a corporation, when enforcing a contract avowedly made with it, he should not be allowed to defeat a creditor of the company, utterly ignorant of the defect or error, when he has admitted himself to be a member.

There is a class of authorities decided in England as to joint-

Eaton, Gilbert and Eaton agt. Aspinwall.

stock associations, which may be usefully noticed—*Maundesley* agt. *Le Blanc*, (2 *Carr. & Payne*, 409;) *Harvey* agt. *Kay*, (9 *B. & Cress.* 356;) *Ellis* agt. *Schmoeck*, (5 *Binn.* 521;) *Doubleday* agt. *Marshall*, (7 *Binn.* 110; 4 *M. & P.* 750.)

*In these cases the prevailing inquiry is, whether the parties have held themselves out as possessing the character which involves the responsibility.* In one case letters of the defendant, in which he admitted himself to be a shareholder, *were held sufficient.*

The defendant takes another defence, which should be noticed. The sixth and seventh of his printed points are to the effect, that the liability imposed by the statute is, that each stockholder should be responsible for his contributory share of the capital, and must be responsible to creditors only for what he has not paid in; and that the defendant has wholly paid up for the stock he held.

But the sixth section of the act of 1852 is express, that the stockholders shall be severally individually liable to the creditors of the corporation, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such corporation, until the amount of its capital shall have been paid in, and a certificate thereof shall have been made and recorded, as prescribed in the next (the 7th) section. That section directs the filing of the sworn certificate thirty days after the whole of the instalments have been paid up. This was wholly omitted, as before stated.

It seems to us plain, that even if a stockholder has fully paid up his subscription, or is an assignee of full-paid stock, he is responsible up to the entire amount he holds for all debts contracted while he owned the stock, until not only the stock is fully paid up, but also until the certificate is duly filed.

The case appears to us a clear one; and the judgment must be affirmed, with costs of the appeal.