Camp v. Byrne et al.

———————

JOHN P. CAMP, Respondent, v. GARRETT BYRNE and the ST. LOUIS, CAIRO AND JOHNSONVILLE PACKET COMPANY, Appellants.

*Corporations—Powers—Members—Estoppel.*—A corporation cannot be organized nor act without the limits of the jurisdiction of the State creating it. All votes and proceedings of persons professing to act in the capacity of corporators, when assembled beyond the bounds of the State granting the charter, are wholly void; but a subscriber to the stock of a corporation thus illegally organized, who has given his note for the amount subscribed, may by his acts be estopped from denying the legal existence of the corporation, when sued by a *bona fide* endorsee for value before maturity.

*Appeal from St. Louis Circuit Court.*

Defendant asked the following instructions, which were refused:

34—VOL. XLI.

1. The defendant asks the court to instruct the jury, if they believe from the evidence in this case that the defendant Byrne's signature to the notes sued on was obtained by false and fraudulent representations of any persons acting or assuming to act as the agents of the St. Louis, Cairo and Johnsonville Packet Company, and that the plaintiff Camp had notice of the same, direct or indirect, sufficient to put a man of ordinary business prudence on his guard, they will find for the defendant, notwithstanding plaintiff may have obtained said notes for value before maturity.

2. Although the jury may believe that a charter was granted by the Legislature of the State of Tennessee by which a corporation was to be (to have been) created to be called the St. Louis, Cairo and Johnsonville Packet Company, such act did not authorize the corporation or stockholders to assemble beyond the limits of the State of Tennessee for the purpose of organizing, electing directors and accepting the said charter; and if the jury believe from the evidence that the first meeting of the stockholders of such corporation was held at St. Louis, in the State of Missouri, then the proceedings of that meeting, and all other meetings outside of the limits of the State of Tennessee, were wholly void and without authority of law, and the jury will find for the defendant Byrne.

3. That unless the jury believe from the evidence that the plaintiff Camp obtained the notes sued upon for value before maturity, and, without notice of the facts set up as a defence by the defendant Byrne, that he took the same subject to the same defence that the defendant Byrne would have had against the St. Louis, Cairo and Johnsonville Packet Company; and if the jury further believe from the evidence that the notes sued upon were obtained in the first place by fraud of any agent or officer of the said company, or that the consideration thereof had failed, or that the same were obtained by false representations of C. J. Caffrey, then the plaintiff cannot recover, and the jury will find for the defendant.

4. Unless the jury believe from the evidence that the St. Louis, Cairo and Johnsonville Packet Company *is a corpora-*

Camp v. Byrne et al.

tion chartered by the State of Tennessee, and that the corporators and stockholders thereof had accepted said charter, and proceeded, under its provisions, to organize such corporation by the election of directors at a meeting of the stockholders held within the limits of the State of Tennessee, and that, before proceeding to transact business as a corporation, the capital stock to the amount of three hundred and fifty thousand dollars had been subscribed and paid in, then the said St. Louis, Cairo and Johnsonville Packet Company never had any legal existence, could not make a contract with the defendant as a corporation, and could not make a lawful transfer of the notes sued upon to plaintiff so as to enable plaintiff to maintain this action.

5. If the jury believe upon the evidence that the said notes were obtained from the defendant by the said C. J. Caffrey, without giving the said defendant value or a consideration for the same, and that the plaintiff had notice of such fact before he negotiated the notes, they should find for the defendant.

6. If the jury believe upon the evidence that the two notes, the subject-matter of the present action, were among others given to plaintiff with instructions from the company to collect the amount and apply the same in payment of the notes of the said company, they should find for the defendant.

The court gave, at the motion of plaintiff's counsel, the following instructions, which were excepted to by the defendfendant, to wit:

2. The jury are instructed that the notes sued on are negotiable promissory notes, and that the plaintiff is entitled to recover, if they shall believe that the notes were negotiated with plaintiff before maturity for value, without notice, all of which must be presumed to be the case until the contrary is made to appear by evidence.

4. The jury are instructed that, after the defendant has made his notes (sued on) payable to the order of the St. Louis, Cairo and Johnsonville Packet Company, and deliv-

ered them to the company, he is precluded from afterwards denying that the company has power to negotiate the same.

5. The jury are instructed that, if they believe that the notes sued on were transferred before maturity to plaintiff for value, then he has a right to recover, unless he had notice prior to receiving the same that the consideration had failed, or some notice that the defendant objected to their negotiation.

And, of its own motion, the court gave the following instruction, excepted to by defendant, to wit:

"The jury are instructed that, if they find for plaintiff, and against defendant Byrne, they will assess the damages against both defendants at the amount of said notes, with interest from maturity at the rate of six per cent.; that, if they find for defendant Byrne, they will so state in their verdict, and assess the damages in favor of plaintiff against the St. Louis, Cairo and Johnsonville Packet Company at the amount of said notes, with interest from maturity at the rate of six per cent. per annum."

And, at the motion of defendant's counsel, the court gave the following, modified by the court by the addition of the words "at or prior to the time said notes were transferred to him," to wit:

"If the jury believe from the evidence that the consideration of the notes sued upon has failed, or that the same were obtained by false representations, or that the transfer of the said notes was made by a person having no authority to transfer the same, they will find for defendant; provided, they further believe that plaintiff had notice thereof '*at or prior to the time said notes were transferred to him.*'"

*Slayback & Spencer*, for appellants.

I. Under the act organizing the St. Louis Circuit Court, a motion to strike out or reform a pleading should be determined by the court in general term. It is improper for this court in special term to strike out, on its own motion, the same parts of a pleading previously passed on at general

term, after the jury had been sworn and the issue joined, without notice to parties.—G. S. 1865, §§ 10 & 11, p. 889, §§ 8, 15, 23, ch. 168, pp. 670–2.

II. A negotiable note or bill of exchange will be void in the hands of an innocent holder when it is founded in fraud, or duress, or imposition, or circumvention, or taking undue advantage of a party.—Sto. on Bills, § 185; Chit. on Bills, pp. 21, 83, 84; Bail. on Bills, p. 143, par. 2, 5 ed.; id. pp. 56, 57, par. 6; Duncan v. Scott, 1 Camp. 100; Rees v. Marquis of Headford, 2 Camp. 574; Grew v. Bevan, 3 Stark. 134; City Bank of Columbus v. Phillips, 22 Mo. 85; 1 Pars. Bills, 276, 277.

III. A contract obtained for a corporation by the fraud of its agent is void; not merely voidable, but void *ab initio*. —Ang. & A. on Corp. § 309, p. 357; Crump v. U. S. Mining Co., 7 Grat. (Va.) 352; Denny v. Kyle, 16 Mo. 450; Scott v. De Pyster, 1 Edwds. Chan. 513; Hibernia Turnpike Co. v. Henderson, 8 S. & R. 219.

IV. Any person who deals with a corporation is not excused for ignorance of public acts limiting its corporate powers, and a person who purchases notes given to a corporation as subscriptions to its stock, knowing them to be so given at the time he takes them, is presumed to have notice as to whether such corporation has ever so perfected its corporate existence as to be able to enforce its subscriptions.—Ang. & A. on Corp. § 291–299; Att. Gen. v. Life & Fire Ins. Co., 9 Paige Chan. 470; Valk v. Crandall, 1 Sand. Chan. 179; Williams v. Chester & Holyhead R.R. Co., 5 Eng. L. & E. 503; Wyman v. Hallowell & Augusta Bk., 14 Mass. 58; Salem Bk. v. Gloucester Bk., 17 Mass. 29; Hartford Bk. v. Barry, 17 Mass. 97.

V. In order to acquire such existence as will enable the corporation to enforce its subscriptions, the charter of such corporation must be accepted, and conditions precedent must be complied with, according to the terms of such charter.— Red. on Rail., §§ 15, 51; Ang. & A. on Corp. §§ 83, 95, 112;

232, 229, 239, 253, 291; 2 Kent C. 293 et seq.; Hibernia Turnpike Co. v. Henderson, 8 Sarg. & R. 219, 224.

VI. The capital stock is a trust fund for creditors, and must be paid in before the corporation can enforce subscriptions, or acquire such vitality as can enable them to make and enforce contracts where the amount of such capital stock is limited by charter.—Fire Dept. v. Kip, 10 Wend. 266; Ang. & A. on Corp., 600; Wood v. Dummer, 3 Mason C. C., 308; Cooper v. Frederick, 9 Ala. 742; Bk. of Natchez v. Chambers, 8 Miss. 49; State v. LaGrange & M. R.R. Co., 9 Humph. (Tenn.) 448; 1 Amer. Law Mag., 103; Red. Rail., §§ 18, 51; King v. Elliott, 5 Sm. & Mar. 428.

VII. Unless a corporation be organized within the State granting its charter, all acts, votes and proceedings of stockholders and directors chosen at meetings assembled outside of the limits of such State, and not in conformity to the charter of such corporation, are wholly void, and persons elected at such meetings so held, without regard to their charter, to act as officers of such corporation, derive no authority to act as such corporation.—Ang. Corp., §§ 104, 161, 274, 265, 291, 403, 466 (a), 521, 543, 498, 633; 7 Grat. (Va.) 352; Green v. Seymour, 3 Sand. Ch. 285; Root v. Goddard, 3 McLean's C. C. 102.

VIII. A corporation organized in Missouri, in order to acquire actual and valid legal existence as a body corporate, must be either chartered by a special act of the Missouri Legislature or formed under the general statutes of the State.—G. S. 1865, ch. 62.

IX. Although corporations created and chartered by the laws of another State may be represented by agents within this State, yet the corporation itself has no power to migrate to this State.—Miller v. Ewer, 14 Shep. (Me.) 509; Bk. of Augusta v. Earle, 13 Pet. (U. S.) 586; id. 122; Tatum v. Wright, 3 Zabr. 429.

X. A person contracting with a corporation is not thereby precluded from denying the legality and binding effect of its

subsequent proceedings, unless he participated in such acts. —Smith v. Heidecker, 39 Mo. 163, and cases above cited.

XI. The doctrine of estoppel to deny the legal existence of a corporation, by having contracted with it by its name, does not apply, unless such corporation has been actually created by law. In the latter case, a person contracting with such corporation may be estopped from disputing the corporate existence, but may question the authority of its agents to act outside of the powers conferred by such charter, and disputing the authority of an agent is not a denial of the existence of such corporation.—Oldtown & Lincoln R.R. Co. v. Veazie, 39 Me. 571.

XII. The general principle that a person who has executed a promissory note payable to a corporation, is not allowed to call in question the corporate capacity of such corporation, does not apply to the maker of a note who has been induced to give his signature to such note by fraud.—Ang. Corp. § 309; Root v. Goddard, 3 McLean's C. C. 102; Crump v. U. S. Mining Co., 7 Grat. (Va.) 352; Fairfield Co. Turnpike Co. v. Thorpe, 13 Conn. 173; Denny v. Kyle, 16 Mo. 450.

XIII. The maker of a note payable to a corporation may resist its payment in the hands of an endorsee, to whom such note may have been transferred by persons not legally authorized under its charter to make such transfer.—Ang. Corp. § 393; 2 Hare Ch. 461; Plahto v. Mer. & Man. Ins. Co. of St. Louis, 38 Mo. 255, and Head v. Prov. Ins. Co., 2 Cranch, 168; Simon v. Randall, 3 M. & Craig Ch. 444; Hodgson v. Copeland, 4 Shep. (Me.) 314; Smith v. Hurd, Metc. (Mass.) 371.

XIV. To make the transfer of a note from a corporation valid, such transfer must be made by a person having authority under the charter and by-laws of the corporation to make such transfer, and persons dealing with a corporation must take notice of the extent of the authority of its agents. —Ernest v. Nichols, 30 Law Times, 45; 6 House of Lords Cases, 418, decided in Aug., 1857; Ridgley v. Kingsbridge

Flour Mill Baking Co., 2 Exch. 711; Salem Mill Dam Co. v. Ropes, 6 Pick. 23, affirmed in 9 Pick. 187; Worcester & Nashua R.R. Co. v. Hinds, 8 Cush. (Mass.) 110; Red. Rail., p. 697, note *a.*; Mechanics' Bk. v. Schaumburg et al., 38 Mo. 243.

*Isaac T. Wise,* for respondent.

FAGG, Judge, delivered the opinion of the court.

This cause is brought here upon an appeal from the St. Louis Circuit Court at general term. The suit was instituted upon two negotiable promissory notes, each for the sum of $250, executed by the appellant Byrne and made payable to the order of the St. Louis, Cairo and Johnsonville Packet Company. They were both dated on the 8th day of December, 1865, one payable ninety days and the other one hundred and twenty days after date. The petition alleges that said company before maturity transferred the same by endorsement to the respondent Camp for value, and that he was then the owner and holder thereof. There was no appearance for the company, and judgment by default was taken against it. The answer of Byrne denies generally the several allegations of the petition, and then proceeds to set up several special grounds of defence: First—that the said notes were given in consideration of his subscription for five shares of stock in the said company at one hundred dollars per share; that he was induced to make the subscription and execute the notes upon the false and fraudulent representations of one C. J. Caffrey. Second—that this company was never a body corporate, but a sham and a fraud concocted by Caffrey with the intent of defrauding and taking advantage of him and many others; that all elections pretended to have been held under a charter for said company passed by the Legislature of the State of Tennessee, as well as all other acts and things done in pursuance thereof, were utterly void and of no effect. Third—that all of the pretended acts of Caffrey as president of the company were

without authority and therefore not binding upon Byrne, and that Camp had notice of these facts at the time he obtained the notes.

A motion was made by the respondent's counsel to strike out so much of the answer as denied the corporate existence of the company, and alleged fraud in its organization, as well as a failure of consideration for the notes. Under the law regulating practice and proceedings in the St. Louis Circuit Court, it is provided that all motions to strike out or reform pleadings shall be heard and determined at general term. The motion in this instance was so heard and by the court overruled. At the trial of the cause at special term, the judge then presiding, on his own motion, directed a large portion of the answer embraced in the motion to be stricken out ; which was done, and exceptions duly taken. The verdict and judgment being for the plaintiff, an appeal was taken to the general term, where the same was affirmed. The action of the judge at special term is assigned for error, and it is insisted upon as sufficient to authorize a reversal of the judgment. We do not think so. It is an irregularity certainly, but not such as to affect the merits of the case. The statute seems to contemplate the settlement of all questions at general term which relate to the form and sufficiency of the pleadings, so that when the causes are distributed for trial at special term the issues are to be considered as made up. The court at general term by affirming the judgment did not seem to regard this departure from the rule of practice fixed by the statute as sufficient to affect the merits of the case, nor do we. The proof presents substantially the following state of facts.

A charter was granted by the General Assembly of the State of Tennessee on the 16th of November, 1865, authorizing the formation of a company to be called the " St. Louis, Cairo and Johnsonville Packet Company." The capital stock was limited to one million of dollars, and the company authorized to organize and proceed to business when the sum of three hundred and fifty thousand dollars should be actu-

ally subscribed and paid in. No organization was effected in the State of Tennessee. The commissioners named in the charter called a meeting for the election of the first board of directors in the city of St. Louis. . A board was elected and proceeded to do business under the charter. It is shown by the testimony offered on the part of the defendant Byrne, that, for the purpose of carrying on the business of the company, the chief part of which, as stated by the charter, being the running of a line of boats from the city of St. Louis to Johnsonville, it was necessary to borrow money. The witness Caffrey, after stating that he had negotiated a loan with Camp, the respondent, and that in that transaction he had transferred to him the notes sued upon, says : "I did it as president of the company. I acted under the direction of the board of directors in doing it. They had not been consulted as to this particular transaction further than they had authorized me to negotiate for a loan of money to meet demands upon the company, and gave me authority to use the credit and resources of the company to do it. I met Mr. Camp, and he told me he had some surplus money, and he called at the office of the company and examined the notes for stock which I proposed to give him as collateral security." Other testimony in the cause shows that this transaction occurred in the month of February, 1866, and before the maturity of either one of the notes in controversy. That portion of the answer which was stricken out at the trial set up the defence that the company had no legal existence as a corporation, and stated specifically the reasons in support of that position.

The law seems to be well settled in this country that " all votes and proceedings of persons professing to act in the capacity of corporations, when assembled beyond the bounds of the State granting the charter of the corporation, are wholly void"—Ang. on Corp. § 498, and Miller v. Ewer, 27 Me. 509. If the respondent's right to recover in this case depended solely upon the power of this company to contract and do business as a corporation, it would seem to be clear that his

action must fail. Whether it was assumed by the judge trying the cause that the act of incorporation was conclusive evidence of the fact that the company had a living corporate being, or that the defendant Byrne by his acts was estopped from denying its existence, cannot be accurately determined from the record. It is certainly true that the mere legislative act is not sufficient of itself to give vitality to a corporate body—a creature said to be "intangible" and "which exists merely in contemplation of law." The acts of the persons designated by the charter, performed in the manner pointed out, could alone clothe the individual subscribers of stock in this company with corporate powers and privileges. The organization of the company, therefore, in the State of Missouri was not a compliance with the provisions of the charter and did not constitute a corporation. But does not the admission of the defendant in his answer, that he executed the notes in question, estop him from denying the existence of the corporation as against an innocent holder? There is no evidence tending to show that Camp had knowledge of any of the facts relied upon in the answer as a defence to the notes. They were transferred before maturity, and the right of the company to make such transfer cannot be disputed by the maker. The notes were executed in the month of December, 1865, and the company continued to do business until the month of June following. There is nothing tending to show that during that time there was any doubt as to the regularity of its organization and its rightful existence as a corporate body. The defendant himself had so recognized it by making the negotiable paper which he did. If he did it with knowledge of the fact that this company, of which he thus become a member, was in point of fact a mere cheat and a fraud upon the public, he should not be permitted to take advantage of his own wrong. Even though he acted in ignorance of the facts in the case, still he had placed it in the power of the company to give currency to his paper, and he alone must suffer the consequences.

The transferring through its officers of the notes in question, as well as the execution of the company's notes to Camp, were concurrent acts. The money was loaned to the company upon the faith of the notes given for stock. Their solvency was passed upon and a selection made by Camp before the money was actually paid to the company. They were not given as collaterals to secure a pre-existing debt, but constituted the security upon which the loan was really made, and Camp is therefore a *bona fide* holder for value.

With this general view of the case, and applying the law to the facts in the record, it is apparent that the instructions asked by the defendant were properly refused. The court committed no error in excluding all testimony in relation to the amount of stock actually subscribed and paid in previous to the first meeting, and also as to what became of the money loaned by Camp to the company. These, with the kindred subjects of investigation sought to be introduced in the course of the trial, were not legitimate matters of inquiry, and the ruling of the court in relation to them must be sustained. The instructions given on the part of the plaintiff, taken together, declared the law properly in relation to negotiable promissory notes in the hands of a *bona fide* holder for value.

The judgment of the Circuit Court must therefore be affirmed. The other judges concur.