## Case No. 8,320.

### LEWIS v. CLARENDON.

[5 Dill. 329:[1] 7 Cent. Law J. 287; 6 Reporter, 609; 1 Md. Law Rec. 107.]

Circuit Court, E. D. Arkansas.   April Term, 1878.

RAILWAY AID BONDS—CONSOLIDATION OF COMPANIES—ULTRA VIRES.

1. A municipal corporation cannot subscribe to the capital stock of a railroad company. and issue its bonds in payment of such subscription, unless the power so to do has been expressly conferred by law.

2. When two or more railroad companies are consolidated. the consolidated company succeeds to and possesses all the franchises, rights, privileges, and immunities of the several companies of which it was formed.

3. The right granted to a railroad company by its charter to receive municipal subscriptions to its capital stock, payable in bonds, is a right and privilege that, upon its consolidation with another company, passes to the consolidated company.

4. Where a city subscribes to the capital stock of a railroad company formed by the consolidation of two or more companies, and issues its bonds to such company in payment of the subscription, in a suit upon the bonds the city is estopped to deny the corporate existence of the company so formed. or the validity of the proceedings for the consolidation.

5. If. in the exercise of its undoubted powers. a corporation makes a contract, some stipulation of which is in excess of its powers, this does not avoid the whole contract. if, after rejecting such stipulation. there remains a good execution of the powers granted; and if a corporation having authority to issue bonds "bearing interest at the rate of six per cent." issue them bearing ten per cent, they are valid obligations for the principal and six per cent interest.

6. Where a statute prescribes a rate of interest, and simply forbids the taking of more. and more is contracted for, the contract is good for what might be lawfully taken, and void only as to the excess.

7. Where authority is given "to any incorporated town or city" in a county to subscribe to the capital stock of a railroad company. such authority is not limited to towns and cities incorporated at the date of the passage of the act.

[Cited in De Voss v. City of Richmond, 18 Grat. 338.]

This action is brought to recover on overdue interest coupons cut from negotiable bonds issued by the city of Clarendon to the Arkansas Central Railway Company, in payment of a $15,000 subscription made by the city to the capital stock of said company. The following is a copy of one of the bonds: "State of Arkansas, City of Clarendon. No. 17. $15,000 Subscription to the Arkansas Central Railway. $500. Know all men by these presents. that the city of Clarendon, in the state of Arkansas, in conformity to the will of a majority of the legal voters of the said corporation, as expressed at an election held

[1] [Reported by Hon. John F. Dillon. Circuit Judge, and here reprinted by permission.]

in accordance with the laws of the said state of Arkansas, on the 25th day of July, A. D. 1871, authorizing said city to subscribe fifteen thousand dollars to the capital stock of the Arkansas Central Railway Company, for value received, hereby promises to pay to the Arkansas Central Railway Company, or bearer, the sum of five hundred dollars, lawful money of the United States of America, on the 1st day of January, A. D. 1882, at the National Park Bank, in the city of New York, with interest thereon at the rate of ten per cent per annum, payable semi-annually, on the first days of April and October in each year, at the National Park Bank, New York, on the presentation and surrender of the annexed coupons as they severally become due and payable. In witness whereof, the said city of Clarendon has caused this bond to be signed by the mayor and attested by the recorder, and the seal of said city to be hereunto affixed, on this 1st day of January, A. D. 1872. B. N. D. Tannehill, Mayor. 'Parker C. Ewen, Recorder."

By act of the general assembly of this state, approved January 20, 1855, the Arkansas Midland Railroad Company was incorporated, and authorized to construct a railroad from Helena to Little Rock; and any "incorporated town or city in the counties of Pulaski and Monroe" was authorized to subscribe to the capital stock of said company, upon a majority vote of the legal voters of such town or city, and to issue its bonds in payment of such subscription, "bearing interest at the rate of six per cent per annum." The charter authorized the company to "make any lawful contract for uniting said road with any other road having the same terminus, or which may at any intermediate point approach the said railroad." On the 8th day of March, 1869, there was filed in the office of the secretary of state of this state articles of association, under the general railroad incorporation law of this state, incorporating the Little Rock & Helena Railroad Company. The purpose of this company was declared to be to construct a railroad from Little Rock to Helena.

The general act for the incorporation of railroads, approved July 28th, 1868, authorized any railroad company then or thereafter incorporated "to purchase and hold any connecting railroad and operate the same, or to consolidate their companies and make one company, under the name of one or both, or any other name." Gantt, Dig. § 4969. On the 31st day of August, 1870, at a meeting of the board of directors of the Arkansas Midland Railroad Company, a resolution was adopted declaring "that the said company be, and the same is hereby, consolidated with the Helena & Little Rock Railroad Company, * * * and that said consolidated company be hereafter known as the Arkansas Central Railway Company."

At a meeting of the stockholders of the Arkansas Midland Railroad Company, September 21, 1870, it was unanimously resolved, "that the action of the board of directors of the company in changing the name of the road from the Arkansas Midland Railroad Company to the Arkansas Central Railway Company be, and the same is hereby, ratified and confirmed." At a meeting of the directors of the Little Rock & Helena Railroad Company, held on the 20th of January, 1871, it was resolved, "by the president and directors of the Little Rock & Helena Railroad Company, that we hereby agree to consolidate with said company, under the name and style of the Arkansas Central Railway Company, and do hereby authorize and empower W. H. Rogers, the president of this company, to convey unto the Arkansas Central Railway Company all the rights and privileges and immunities that we have or may have had, or by any means may hereafter become entitled to, under or by virtue of said organization, and after said conveyance is made this company shall utterly cease as a separate organization."

Mr. Taylor testifies that he was president of the Arkansas Midland Railroad Company at the time that corporation was consolidated with the Helena & Little Rock Railroad Company, and continued to be president of the consolidated company under the name of the Arkansas Central Railway Company; that the latter company built and operated about fifty miles of its road, running from Helena to Clarendon; that the business of the Arkansas Central Railway Company was conducted exclusively under the charter of the Arkansas Midland Railroad Company; that the object and purposes of the Arkansas Midland Railroad Company, and Little Rock & Helena Railroad Company, and Arkansas Central Railway Company, were identical, viz., the construction of a railroad from Helena to Little Rock, and that the proposed line of road of each of said corporations was the same.

The defences are: (1) That the defendant was not authorized or empowered to issue its bonds bearing interest at the rate of ten per cent., and that the bonds are, therefore, void. (2) Denies that there ever was such a corporation as the Little Rock & Helena Railroad Company. (3) Denies that the Arkansas Midland Railroad Company ever was legally consolidated with the Little Rock & Helena Railroad Company. (4) Denies that the Arkansas Central Railway Company was formed by the consolidation of the Arkansas Midland Railroad Company and the Little Rock & Helena Railroad Company, but alleges it was organized on the 1st day of May, 1871, as an independent corporation. (5) Denies that section 16 of the act incorporating the Arkansas Midland Railroad Company is applicable to the defendant city, which, it is alleged, "was not in existence at the date of the passage of said act, not having been founded until the year 1857, and

not having been incorporated before February 8th, 1859."

E. W. Kimball, for plaintiff.
William W. Smith, for defendant.

CALDWELL, District Judge. The defendant city could not subscribe to the capital stock of a railroad company, and issue its bonds in payment of such subscription, unless it was authorized so to do by law. Authority for the defendant to subscribe to the capital stock of the Arkansas Midland Railroad company, and issue its bonds in payment therefor, is found in sections 16 and 15 of the charter of said company; and if the bonds in suit are void obligations, it is because they were issued under the authority of those sections.

It is a settled principle that where two or more railroad companies amalgamate or consolidate their respective roads under authority of law, the new or consolidated company succeeds to and possesses all the franchises, rights, privileges, and immunities of the several companies of which it was formed. Zimmer v. State, 30 Ark. 677; Robertson v. City of Rockford, 21 Ill. 451; Nugent v. Supervisors, 19 Wall. [86 U. S.] 241, 242. And that the right granted to a company by its charter to receive municipal subscriptions to its capital stock is a right and privilege that, upon its consolidation with another company, passes with its other rights and privileges to the consolidated company, has been expressly decided. County of Scotland v. Thomas, 94 U. S. 682; reaffirmed in County of Henry v. Nicolay, 95 U. S. 619.

If, therefore, the Arkansas Midland Railroad Company and the Little Rock & Helena Railroad Company were legally consolidated under the name of the Arkansas Central Railway Company, the latter company succeeded to all the chartered rights of the Midland company, and the defendant could rightfully subscribe to the capital stock of the consolidated company, and issue its bonds in payment therefor.

Acting under the authority of section 5 of the amended charter of the Arkansas Midland Railroad Company, and section 4969 of Gantt's Digest, proceedings were had by the last-named company and the Little Rock & Helena Railroad Company to consolidate their respective companies, under the name of the Arkansas Central Railway Company. These two roads had the same termini, and their object and purpose were identical, viz.. the construction of a railroad from Helena to Little Rock.

It is objected that the consolidation of these companies under the new name was not regular and legal; that the charter of the Arkansas Midland Railroad Company only authorized that company to consolidate with "any other road having the same terminus;" that this did not authorize consolidation with a road running parallel, and having the same termini; that the authority to consolidate given by the general act for the incorporation of railroads, passed in 1868 (section 4969 of Gantt's Digest), is limited to "connecting railroads," and does not extend to parallel roads having the same termini. It is not disputed that the consolidation took place in fact, and that the new or consolidated company, under the name of the Arkansas Central Railway Company, assumed to exercise and possess, and did exercise in fact, all the functions and franchises of a railroad corporation, under the charter of the Arkansas Midland Railroad Company; that it built and operated fifty miles of railroad, made contracts, received subscriptions to its capital stock, and exercised and performed every function pertaining to such corporation from the date of the consolidation. Its right to do so was never challenged by the state, nor questioned in any mode by any person. No director or stockholder of either of the two companies complained of the consolidation or change of name, but, on the contrary, appear to have ratified it.

If this was a suit to collect a stock subscription from a subscriber to one of the original companies, a different question might be presented. But the city of Clarendon subscribed to the capital stock of the consolidated company. The subscription was made in conformity to the authority given and the requirements contained in the charter of the Arkansas Midland Railroad Company; and the action of the city in subscribing for stock and issuing bonds must, under the evidence and pleadings, be referred to the authority given it so to do in the charter of the Arkansas Midland Railroad Company, which latter company had, by change of name or consolidation, or both, become the Arkansas Central Railway Company. By subscribing for stock and issuing its bonds, under these circumstances, to the consolidated company, the city is estopped, in a suit upon such bonds, to show that the Arkansas Central Railway Company was not a corporation de jure, or that the proceedings to change the name of the Arkansas Midland Railroad Company, or to consolidate that company with the Little Rock & Helena Railroad Company, under the name of the Arkansas Central Railway Company, were not in conformity to law.

In principle, this case cannot be distinguished from the case of County of Leavenworth v. Barnes, 94 U. S. 70. In that case it was objected that the bonds were issued to a company that had no legal existence in January, 1865, when the election was held, and on the 1st of July, 1865, when the bonds were issued. Answering this objection, the supreme court say: "This company was organized in 1860, under the name of the Missouri River Railroad Company, and on the 18th of April, 1866, it consolidated with another company, increasing its capital and changing its name to that of the Leavenworth & Missouri Pacific Railroad Company. We suppose this to have been authorized by

the statutes of Kansas. Laws 1862, p. 768. We are certainly of the opinion that when the parties interested in the two companies are content; when the newly-named company has been in operation for ten years; when the county has received and held its stock until 1869, when the same was sold by the county, by authority of the legislature, it is not competent for such a contracting party to say that there was an irregularity in the organization of the company."

In Commissioners of Douglass County v. Bolles, 94 U. S. 104, the suit was upon bonds issued by the county to the St. Louis, Lawrence & Denver Railroad Company, and the court say: "Whether the St. Louis, Lawrence & Denver Railroad Company was lawfully a corporation capable of contracting with the defendants below, is a question that cannot be raised in this case. * * * The company has built and operated a railroad from Lawrence to the Missouri state line, and has exercised the usual functions of a railroad corporation. It has been a corporation de facto, at least, if not de jure, from the date of its organization. Its corporate existence, therefore, and its ability to contract, cannot be called in question in a suit brought upon evidence of a debt given to it."

And in a still later case the court say: "Where a shareholder of a corporation is called upon to respond to a liability as such, and where a party has contracted with a corporation, and is sued upon the contract, neither is permitted to deny the existence or the legal validity of such corporation. To hold otherwise would be contrary to the plainest principles of reason and good faith, and involve a mockery of justice. Parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been led to rely. Sound ethics require that the apparent, in its effects and consequences, should be as if it were real, and the law properly so regards it." Casey v. Galli, 94 U. S. 680. And the court cite in support of this doctrine: Eaton v. Aspinwall, 19 N. Y. 119, 6 Duer, 176; Cooper v. Shaver, 41 Barb. 151; Camp v. Byrne, 41 Mo. 525; Danbury & N. R. Co. v. Wilson, 22 Conn. 435; Ellis v. Schmoeck, 5 Bing. 521; McFarlan v. Triton Ins. Co., 4 Denio, 392; All Saints Church of New York v. Lovett, 1 Hall, 191; Topping v. Bickford, 4 Allen, 121; Dooley v. Wolcott, Id. 407; Eppes v. Mississippi, G. & T. R. Co., 35 Ala. 33; Hamtramck v. Bank of Edwardsville, 2 Mo. 169; Jones v. Cincinnati Type Foundry Co., 14 Ind. 89; Worcester, etc., Inst. v. Harding, 11 Cush. 285; Hughes v. Bank of Somerset, 5 Litt. (Ky.) 47; Tar River Nav. Co. v. Neal, 3 Hawks, 520. And the following additional cases may be cited in support of this doctrine: Bigelow, Estop. (2d Ed. 423, 424) 464; Zabriskie v. Cleveland, 23 How. [64 U. S.] 400; John v. Farmers', etc., Bank, 2 Blackf. 367; Brookville, etc.,

Turnpike Co. v. McCarty, 8 Ind. 392; Ensey v. Cleveland, etc., R. Co., 10 Ind. 178; Anderson v. Newcastle, etc., R. Co., 12 Ind. 376; Palmer v. Lawrence, 3 Sandf. 161; Fisher v. Evansville & C. R. Co., 7 Ind. 407.

The charter authorizes the issue of bonds "bearing interest at the rate of six per cent per annum." There are no negative words; a higher rate is not in terms prohibited, and no penalty is prescribed for issuing or receiving bonds drawing a higher rate. At the time the bonds were issued, the constitution of 1868 was in force, which declared "no law limiting the rate of interest for which individuals may contract in this state, shall ever be passed." And the act of July 13th, 1868, was also in force, which declared it should be lawful for parties to stipulate for any rate of interest for "money loaned, or in any manner due and owing from any other person or corporation to any other person or corporation in this state." Gantt, Dig. § 4278.

The city and the railroad company seemed to have supposed this legislation had removed the restriction in the charter as to the rate of interest. Whether this is a sound view it is not necessary to determine, because the plaintiff having waived all claim for interest beyond six per cent, there are other satisfactory grounds upon which to rest the decision of the question. The power to issue the bonds is conceded; the rate of interest they should draw is a mere incident to the exercise of the power to issue, and not vital to the validity of the bonds otherwise lawfully issued. The city and the company might have agreed on a less rate than six per cent, and the insertion of a larger rate is at most a stipulation in excess of the power relating to a mere incident of the main power and contract, and the bonds are valid to the extent of the principal and lawful interest, and invalid as to the excess of interest only.

If, in the exercise of its undoubted powers, a corporation makes a contract, some stipulation of which is in excess of its powers, this does not avoid the whole contract, if, after rejecting such stipulation, there remains a good execution of the powers granted. Johnson v. County of Stark, 24 Ill. 91, 92; U. S. v. Bradley, 10 Pet. [35 U. S.] 343; City of Quincy v. Warfield, 25 Ill. 317. In the last case cited, under authority to issue bonds bearing eight per cent interest, bonds stipulating for twelve per cent were issued, and it was held they were valid and bore interest at the statutory rate.

If tested by the rule applicable to laws regulating the rate of interest (which, as usury laws are based on public policy, is a view too favorable to the defendant), the same result is reached. "Where a statute prescribes a rate of interest, and simply forbids the taking of more, and more is contracted for, the contract is good for what might be lawfully taken, and void only as to the excess." Farmers', etc., Nat. Bank v. Dearing, 91 U. S. 35; and see, to the same

effect, Darby v. Boatman's Sav. Inst. [Case No. 3,571]; and cases cited; Burnhisel v. Firman, 22 Wall. [89 U. S.] 170. The case of Bank of U. S. v. Owens, 2 Pet. [27 U. S.] 557, and what is said by the court in Tiffany v. Boatman's Inst., 18 Wall. [85 U. S.] 375, 384, has not been overlooked. In reference to them, it may be remarked that what is there said on the point is difficult to reconcile with what is said by the court in the later cases of Burnhisel v. Firman, supra, and Farmers', etc., Nat. Bank v. Dearing, supra.

In the last-named cases the question was fairly raised by the record, and proper to be decided. In the last case (Farmers', etc., Nat. Bank v. Dearing) the rule is stated with force and perspicuity, and supported by citations that show it to have been a deliberate opinion; and as this is the latest utterance of that court on the question, it must be regarded by this court as an authoritative exposition of the law, and it certainly is in harmony with the general, "though not quite uniform, doctrine of the authorities." Dillon, Circuit Judge, in Darby v. Boatman's Sav. Inst., supra.

There seems to have been filed in the office of the secretary of state, on the 5th day of May, 1871, articles of association incorporating a railroad company to be known as the "Arkansas Central Railway Company." The articles of association of that road were not filed until after the consolidation of the Little Rock & Helena Railroad Company and the Arkansas Midland Railroad Company, under the name of the Arkansas Central Railway Company. Under the provisions of section 4942 of Gantt's Digest, the articles of association of that road were a nullity, and it is not shown that it exercised, or attempted to exercise, a simple corporate function. But it is enough to say that the pleadings and proofs show that the defendant subscribed to the capital stock of the Arkansas Central Railway Company formed by the consolidation of the Little Rock & Helena Railroad Company and the Arkansas Midland Railroad Company, and that the bonds were issued to the company thus formed.

The authority to subscribe is given "to any incorporated town or city." This language embraces towns and cities then or thereafter incorporated. All that is required is that they shall be "incorporated" at the time the subscription is made. The construction of the branch to Pine Bluff was authorized by section 5 of the charter. The plaintiff is entitled to judgment for six-tenths of the face value of the coupons, and interest on the same at six per cent from the date of the maturity of the same. Judgment accordingly.